**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------x
ALONZO BAKER,                                                            Case No.:

                Plaintiff,

      -against-                                                       **VERIFIED COMPLAINT**

CITY OF NEW YORK, FIRE DEPARTMENT,                                       **PLAINTIFF DEMANDS**
                                                                     **A TRIAL BY JURY**

                Defendants.

-------------------------------------------------------------------------x

Plaintiff ALONZO BAKER ("Mr. Baker" or "Plaintiff"), by and through his attorneys, White, Hilferty & Albanese, hereby complains of Defendant CITY OF NEW YORK, FIRE DEPARTMENT ("Defendant"), upon information and belief as follows:

## NATURE OF THE CASE

1. Plaintiff brings this action alleging that Defendant has violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*, the New York State Human Rights Law, N.Y. Exec. Law 290. *et seq.*, and the New York City Human Rights Law, N.Y. Admin Code 8-107, *et seq.* and seeks damages to redress the injuries he has suffered as a result of being Discriminated Against on the Basis of his race and retaliated against for his engagement in protected activity.

## JURISDICTION & VENUE

2. Jurisdiction of this Court is proper under 42 U.S.C. § 2000, *et seq.*, and 28 U.S.C. §§ 1331 and 1343.

3. The Court has supplemental jurisdiction over Plaintiff's claims brought under state law pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

## PROCEDURAL REQUIREMENTS

5. In August 2021, Plaintiff filed a complaint with the New York State Division of Human Rights, cross filed with the Equal Employment Opportunity Commission.

6. Plaintiff withdrew his NYSDHR complaint and requested a Dismissal and Notice of Rights from the EEOC, which the EEOC issued on February 14, 2022.

7. Plaintiff has filed this action within 90 days of receipt of the Dismissal and Notice of Rights.

## THE PARTIES

8. Plaintiff was and is a resident of Brooklyn, New York, employed by the Defendant as a Firefighter.

9. Plaintiff is an African American male.

10. Defendant is a department of the government of the City of New York that provides fire protection, technical rescue services, and emergency medical services responses to the five boroughs of the City of New York. At all times relevant, Defendant owned, operated, and/or maintained its place of business in New York County, New York.

## BACKGROUND FACTS

11. In 2016, Defendant hired Plaintiff as a firefighter.

12. Plaintiff was an African American priority hire.

13. FDNY members within Plaintiff's firehouse disliked him because of a rumor that he put in seven EEO complaints during his time in the fire academy, in order to graduate.

14. During one of Plaintiff's first tours after Probationary Firefighting School in October 2017, two firefighters in his firehouse E-286/L0135 told him that most of the black priority are "bags of shit and only come on the job to take money and jobs away."

15. The firefighters also said that EEO users were bags of shit and complainers that are not build for the department.

## MATERIAL FACTS

16. On April 2, 2021, Defendant held a customary going away celebration for Captain Richard Blasi ("Blasi"), who received a promotion to Chief. The party took place at the firehouse and when Plaintiff arrived, he overheard Firefighter Christopher Goetchius ("Goetchius") speaking to civilian Bobby Tolley ("Tolley").

17. When Goetchius saw Plaintiff, he made racially motivated remarks such as, "I can't stand that black motherfucker. I wish he would just leave the house already. Nobody likes his black ass anyway. The house would be so much better without him. Fucking asshole."

18. Plaintiff proceeded towards Blasi to congratulate him; however, Fire Marshall Jennifer Quinones ("Quinones") asked to speak with Blasi first.

19. Tolley subsequently approached Plaintiff and physically assaulted him while stating, "I heard about you! Get your black ass out of here. No one wants your kind on the job anyway. You'd better get the fuck out of here right now before I fuck you up. Get the fuck out of here."

20. Tolley had his left forearm on the back of Plaintiff's neck, as he grabbed his right wrist with his right hand. Plaintiff pleaded for Tolley to release Plaintiff.

21. Firefighter Kerron Kangal came towards Tolley and Plaintiff and pulled Tolley away stating, "Let's go buddy. You're done." Tolley screamed, "But you said it was him! Chris [Goetchis] said it was him!"

22. Plaintiff later discussed the incident with Captain Carl Italiano ("Italiano") and was informed that Blasi learned about what transpired with Tolley, but neither captain took any remedial measures to address the racially fueled assault/incident occurred.

23. On April 3, 2021, Complainant discussed the incident with Firefighter Angel Robles ("Robles") and subsequently with Quinones.

24. On April 8, 2021, Firefighter Ross sent Plaintiff a text that, "the incident was totally unacceptable and Bobby was dealt with. It wasn't anything you did."

25. On April 21, 2021, Lt. Mayerhoffer told Plaintiff that he did not want anything "bad" to happen to Blasi or Italiano if Plaintiff were to escalate the situation and essentially tried with the intent to deter Plaintiff from taking any action. He threatened Plaintiff that he (Plaintiff) should take his career into consideration before he does anything he may regret. He further threatened Plaintiff that his (Plaintiff's) career was just beginning and that if he wanted to have a good reputation that he should keep quiet.

26. On May 22, 2021, Plaintiff reported the assault at the 104th precinct. Sargent Tsui interrogated Plaintiff about why he took so long to come forward and Complainant explained that he feared retaliation. Tsui insisted that Plaintiff should have reported the incident to his union delegate prior to coming to the precinct. Tsui then walked away after hearing Plaintiff story and Plaintiff waited two hours only for Officer Bonilla to hand him an incident slip stating that Tsui told her to give Plaintiff the slip. Plaintiff asked for a copy of the incident report but was denied and told to return for it in a few days.

27. On May 23, 2021, Defendant reassigned Plaintiff to Engine 329, the second slowest firehouse in New York City, also creating a significantly further commute for Complainant.

Although Plaintiff requested to be transferred in fear of his safety, he did not request this particular assignment.

28. On May 26, 2021, Complainant learned that Tsui did not file and/or report the incident as an assault/hate crime. He filed it as a traffic violation. The Sargent on duty apologized to Complainant and represented that he would file a new report and handed Plaintiff an incident report classified as harassment. Plaintiff expressed his concern regarding the misclassification of the report, but the precinct failed to remedy the error. Plaintiff thereafter went to meet with Don Nguyen about the April 2nd incident and his reassignment.

29. On May 28, 2021, Plaintiff had a meeting at Internal Affairs with Detective Stone and Police Officer Melexenis.

30. On May 29, 2021, Plaintiff reported the assault at the 81st precinct. The Sergeant on duty questioned the validity of the incident. Asking Complainant, "why did it take so long to report… if you're lying you [Complainant] will be arrested."

31. On June 7, 2021, Complainant told Italiano his version of the events and then went downtown and spoke with the head of BITS.

32. On December 13, 2021, Firefighter Restrepo made a series of discriminatory retaliatory comments towards Plaintiff because of him being an African American priority hire and him filing a previous EEO complaint. Restrepo admitted that Plaintiff is being targeted and that no one wants to be around Plaintiff because of his African American priority status hiring and because of the EEO complaint Plaintiff filed. Restrepo went on to state that Plaintiff would continue facing retaliation and no matter which firehouse he transfers to, everyone will know that he put in an EEO complaint. Restrepo told Plaintiff that if he continues cleaning the kitchen, bunk rooms, and mop the floors, that it may be easier for

him. These are demeaning tasks that are not within the purview of Plaintiff's job as a firefighter.

33. Between December 13 and 15, 2021, FDNY members at Plaintiff's firehouse E331/L137 affixed a CD-30 transfer form to his locker in retaliation for being an African American priority hire and filing an EEO complaint. A CD-30 transfer form is an indication from the other members that they want Plaintiff to transfer firehouses. Plaintiff complained about this incident to Lieutenant Mirth and Don Nguyen, with whom he filed a formal complaint.

34. To date, Plaintiff continues to await the results of the investigation into the Restrepo and CD-30 incident.

35. On December 16, 2021, Captain Scialpi of E331/L137 (who was on vacation at the time of the incident), called Plaintiff and apologized for the discriminatory and retaliatory actions on behalf of the firehouse.

36. Based on the foregoing, Defendant discriminated against Plaintiff on the basis of his race. During a work-related event, Plaintiff was assaulted and called racially derogatory names. Plaintiff reported this incident, as it was also witnessed, to several authoritative figures such as: Captain Italiano, Captain Blasi, Lieutenant Mayerhoffer, Don Ngyen, and BITS. Mayerhoffer warned Plaintiff that if he escalated/complained further that it would ruin his career. Plaintiff also filed a report with the NYPD. Defendant failed to initiate any meaningful investigation into the matter and instead relocated Plaintiff to a firehouse that was the second slowest one in New York City and a significantly further commute for the Plaintiff.

**FIRST CAUSE OF ACTION AGAINST DEFENDANT**
**(DISCRIMINATION IN VIOLATION OF 42 U.S.C. 2000e-2)**

37. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

38. Defendant's discrimination concerned one of the activities protected by Title VII of the Civil Rights Act of 1964, Section 2000e-2.

39. Title VII of the Civil Rights Act of 1964, Section 2000e-2, Section 703 "Employer Practices" states: "It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

40. Defendant engaged in an unlawful practice by discriminating against Plaintiff because of his race.

41. Plaintiff is a member of a protected class pursuant to Title VII of the Civil Rights Act of 1964, Section 2000e-2, namely Plaintiff is Black.

42. Plaintiff possessed proper qualifications for Defendant to continue his employment, as the Plaintiff completed the fire academy/probationary school and subsequently hired as a firefighter, which title he maintains to this present day.

43. Defendant and/or its agents subjected Plaintiff to adverse action when Plaintiff suffered an assault during a work function and called racial slurs. Plaintiff reported this incident, as it was also witnessed, to several authoritative figures such as: Captain Italiano, Captain Blasi, Lieutenant Mayerhoffer, Don Ngyen, and BITS. Mayerhoffer warned Plaintiff that if he escalated/complained further that it would ruin his career. Plaintiff also filed a report with the NYPD. Defendant failed to initiate any meaningful investigation into the matter and instead relocated Plaintiff to a firehouse that was the second slowest one in New York City

and a significantly further commute for the Plaintiff. Members within Plaintiff's firehouse have also targeted him for being an African American priority hire and demanded that he transfer firehouses by posting a CD-30 transfer form to his locker. Plaintiff has also been isolated within his firehouse and required to complete demeaning tasks, such as cleaning.

44. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of Title VII of the Civil Rights Act of 1964, Section 2000e-2, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

### SECOND CAUSE AGAINST DEFENDANT
### (DISCRIMINATION IN VIOLATION OF N.Y. EXEC. LAW § 296)

45. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

46. Defendant's discrimination concerned activities protected by New York Executive Law § 296.

47. The New York State Human Rights Law, N.Y. Exec. Law § 296 provides, in pertinent part: "It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

48. Plaintiff is a member of a protected class pursuant to N.Y. Exec. Law § 296, namely Plaintiff is Black.

49. Plaintiff possessed proper qualifications for Defendant to continue his employment, as the Plaintiff completed the fire academy/probationary school and subsequently hired as a firefighter, which title he maintains to this present day.

50. Defendant and/or its agents subjected Plaintiff to adverse action when Plaintiff suffered an assault during a work function and called racial slurs. Plaintiff reported this incident, as it was also witnessed, to several authoritative figures such as: Captain Italiano, Captain Blasi, Lieutenant Mayerhoffer, Don Ngyen, and BITS. Mayerhoffer warned Plaintiff that if he escalated/complained further that it would ruin his career. Plaintiff also filed a report with the NYPD. Defendant failed to initiate any meaningful investigation into the matter and instead relocated Plaintiff to a firehouse that was the second slowest one in New York City and a significantly further commute for the Plaintiff. Members within Plaintiff's firehouse have also targeted him for being an African American priority hire and demanded that he transfer firehouses by posting a CD-30 transfer form to his locker. Plaintiff has also been isolated within his firehouse and required to complete demeaning tasks, such as cleaning.

51. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of N.Y. Exec. Law §296, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

## THIRD CAUSE OF ACTION AGAINST DEFENDANT
### (DISCRIMINATION IN VIOLATION OF N.Y. ADMIN. CODE § 8-107)

52. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

53. Defendant's discrimination concerned activities protected by New York City Administrative Code § 8-107.

54. The New York City Human Rights Law, N.Y. Admin Code 8-107 provides, in pertinent part: "It shall be an unlawful discriminatory practice: (a) For an employer or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual orientation, uniformed service or alienage or citizenship status of any person: (i) To represent that any employment or position is not available when in fact it is available; (ii) To refuse to hire or employ or to bar or to discharge from employment such person; or (iii) To discriminate against such person in compensation or in terms, conditions, or privileges of employment."

55. Plaintiff is a member of a protected class pursuant to N.Y. Admin Code 8-107, namely Plaintiff is Black.

56. Plaintiff possessed proper qualifications for Defendant to continue his employment, as the Plaintiff completed the fire academy/probationary school and subsequently hired as a firefighter, which title he maintains to this present day.

57. Defendant and/or its agents subjected Plaintiff to adverse action when Plaintiff suffered an assault during a work function and called racial slurs. Plaintiff reported this incident, as it was also witnessed, to several authoritative figures such as: Captain Italiano, Captain Blasi, Lieutenant Mayerhoffer, Don Ngyen, and BITS. Mayerhoffer warned Plaintiff that if he escalated/complained further that it would ruin his career. Plaintiff also filed a report with the NYPD. Defendant failed to initiate any meaningful investigation into the matter and

instead relocated Plaintiff to a firehouse that was the second slowest one in New York City and a significantly further commute for the Plaintiff. Members within Plaintiff's firehouse have also targeted him for being an African American priority hire and demanded that he transfer firehouses by posting a CD-30 transfer form to his locker. Plaintiff has also been isolated within his firehouse and required to complete demeaning tasks, such as cleaning.

58. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of N.Y. Admin Code 8-107, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

**FOURTH CAUSE OF ACTION AGAINST DEFENDANT**
**(RETALIATION IN VIOLATION OF 42 U.S.C. 2000e-3)**

59. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

60. Defendant's discrimination concerned activities protected by Title VII of the Civil Rights Act of 1964, Section 2000e-3.

61. Title VII of the Civil Rights Act of 1964, Section 2000e-3 provides, in pertinent part: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this

subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

62. Plaintiff engaged in a protected activity by opposing the racially motivated assault that he was subjected to on April 2, 2021.

63. Plaintiff opposed the incident to Captain Italiano, Captain Blasi, Lieutenant Mayerhoffer, Don Ngyen, and BITS, making them aware of what occurred, accordingly Defendant was aware of Plaintiff's engagement in protected activity.

64. Defendant and/or its agents subjected Plaintiff to adverse action when Mayerhoffer threatened Plaintiff that if he escalated/complained further that it would ruin his career. Defendant failed to initiate any meaningful investigation into the matter and instead relocated Plaintiff to a firehouse that was the second slowest one in New York City and a significantly further commute for the Plaintiff. Members within Plaintiff's firehouse have also targeted him for being an African American priority hire and demanded that he transfer firehouses by posting a CD-30 transfer form to his locker. Plaintiff has also been isolated within his firehouse and required to complete demeaning tasks, such as cleaning.

65. Defendant took these adverse actions against Plaintiff in temporal proximity to his engagement in protected activity, as Plaintiff was reassigned within a month.

66. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of Title VII of the Civil Rights Act of 1964, Section 2000e-3, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

## FIFTH CAUSE OF ACTION AGAINST DEFENDANT
### (RETALIATION IN VIOLATION OF N.Y. EXEC. LAW § 296)

67. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

68. Defendant's discrimination concerned activities protected by the New York Executive Law § 296(7).

69. The New York State Human Rights Law, N.Y. Exec. Law § 296(7) provides in pertinent part that, "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article."

70. Plaintiff engaged in a protected activity by opposing the racially motivated assault that he was subjected to on April 2, 2021.

71. Plaintiff opposed the incident to Captain Italiano, Captain Blasi, Lieutenant Mayerhoffer, Don Ngyen, and BITS, making them aware of what occurred, accordingly Defendant was aware of Plaintiff's engagement in protected activity.

72. Defendant and/or its agents subjected Plaintiff to adverse action when Mayerhoffer threatened Plaintiff that if he escalated/complained further that it would ruin his career. Defendant failed to initiate any meaningful investigation into the matter and instead relocated Plaintiff to a firehouse that was the second slowest one in New York City and a significantly further commute for the Plaintiff. Members within Plaintiff's firehouse have also targeted him for being an African American priority hire and demanded that he transfer firehouses by posting a CD-30 transfer form to his locker. Plaintiff has also been isolated within his firehouse and required to complete demeaning tasks, such as cleaning.

73. Defendant took these adverse actions against Plaintiff in temporal proximity to his engagement in protected activity, as Plaintiff was reassigned within a month.

74. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of New York Executive Law § 296(7), Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

## SIXTH CAUSE OF ACTION AGAINST DEFENDANT
### (RETALIATION IN VIOLATION OF N.Y. ADMIN. CODE § 8-107(7))

75. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

76. Defendant's discrimination concerned activities protected by N.Y. Admin Code § 8-107(7).

77. N.Y. Admin Code § 8-107(7) provides in pertinent part that, "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter . . . The retaliation or discrimination complained of under this subdivision need not result in an ultimate action with respect to employment… in a materially adverse change in the terms and conditions of employment…provided, however, that the retaliatory or discriminatory act or acts complained of must be reasonably likely to deter a person from engaging in protected activity."

78. Plaintiff engaged in a protected activity by opposing the racially motivated assault that he was subjected to on April 2, 2021.

79. Plaintiff opposed the incident to Captain Italiano, Captain Blasi, Lieutenant Mayerhoffer, Don Ngyen, and BITS, making them aware of what occurred, accordingly Defendant was aware of Plaintiff's engagement in protected activity.

80. Defendant and/or its agents subjected Plaintiff to adverse action when Mayerhoffer threatened Plaintiff that if he escalated/complained further that it would ruin his career. Defendant failed to initiate any meaningful investigation into the matter and instead relocated Plaintiff to a firehouse that was the second slowest one in New York City and a significantly further commute for the Plaintiff. Members within Plaintiff's firehouse have also targeted him for being an African American priority hire and demanded that he transfer firehouses by posting a CD-30 transfer form to his locker. Plaintiff has also been isolated within his firehouse and required to complete demeaning tasks, such as cleaning.

81. Defendant took these adverse actions against Plaintiff in temporal proximity to his engagement in protected activity, as Plaintiff was reassigned within a month.

82. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the New York Admin, Code § 8-107, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendant:

A.      Declaring that Defendant engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq.*, the New York State Human

Rights Law, N.Y. Exec. Law 290. *et seq*., and the New York City Human Rights Law, N.Y. Admin Code 8-107, *et seq.* by discriminating against Plaintiff on the basis of his race, as well as retaliated against him for engagement in protected activity;

B.   Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

C.   Awarding Plaintiff punitive damages;

D.   Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action;

E.   Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practice.

Dated: New York, New York
May 11, 2022

                    WHITE, HILFERTY & ALBANESE

                    By: /s/_____
                        Nina A. Ovrutsky
                        J. Christopher Albanese
                        *Attorneys for Plaintiff*
                        845 Third Avenue, 6th Floor
                        New York, New York 10022
                        (917) 810 9946

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X       Case No.:
ALONZO BAKER,

                      Plaintiff,       **VERIFICATION**

       -against-

CITY OF NEW YORK, FIRE DEPARTMENT,

                      Defendant.
-----------------------------------------------------------------------X

    ALONZO BAKER pursuant to the provisions of 28 U.S.C. 1746, declares the following under penalty of perjury that the foregoing is true and correct:

1. I am the Plaintiff herein.

2. I have read the foregoing Complaint and know the content thereof, that the same is of my own knowledge except as to the matters therein stated upon information and belief; and that as to those matters, I believe the same to be true.

Executed:    New York, New York
                  May 11, 2020

                                                          DocuSigned by:

                                                           *Alonzo Baker*
                                                     2080164A7C99413...
                                                      ALONZO BAKER