UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALONZO BAKER,

                              Plaintiff,

               -against-

CITY OF NEW YORK, FIRE
DEPARTMENT,

                              Defendant.

22-CV-3868 (JGLC)

<u>**OPINION AND ORDER**</u>

JESSICA G. L. CLARKE, United States District Judge:

Plaintiff, a Black man, is a firefighter and "priority hire" for Defendant City of New York, Fire Department ("Defendant"). Through this action, Plaintiff alleges that he endured racially discriminatory remarks and incidents, and also faced retaliation because he formally reported these incidents. These alleged incidents include a verbal assault by a colleague, a physical assault by a non-employee at an employment-related event, derogatory remarks mentioning his race, threats by co-workers not to protect him on the job, unexplained damaged and removed gear, and retaliatory transfers to different firehouses. Plaintiff subsequently filed this action claiming unlawful discrimination and retaliation under federal law and New York's state and city human rights laws.

Presently before the Court is the Defendant's motion for summary judgment as to all of Plaintiff's claims. Defendant generally argues that Plaintiff has failed to adduce sufficient evidence to permit a reasonable factfinder to conclude that he faced any adverse employment actions, or was treated less well, because of his race. For the reasons set forth below, the Court GRANTS summary judgment in part and DENIES it in part. Plaintiff's retaliation claims are dismissed under all statutes because he has failed to adduce evidence demonstrating that Defendant's stated non-discriminatory reasons for any such actions were merely pretextual.

Plaintiff's federal discrimination claims also do not survive summary judgment due to issues with his prima facie case and inability to impute the conduct of non-supervisors to Defendant. However, Plaintiff's hostile work environment claim under all statutes will be permitted to proceed, in addition to his race discrimination claim under the more permissive New York state and city human rights laws.

**BACKGROUND[1]**

Unless otherwise indicated, the Court only cites a 56.1 statement where (1) the factual assertion is undisputed; and (2) the factual assertion is properly supported by a citation to the record. These citations include instances where a party does not truly "dispute" an assertion, but merely seeks to qualify or add their own "spin" to it. *See Kaye v. New York City Health and Hosps. Corp.*, No. 18-CV-12137 (JPC), 2023 WL 2745556, at *2 n.2 (S.D.N.Y. Mar. 31, 2023). The Court otherwise cites to the exhibits filed by the parties in connection with the instant motions, and any relevant pleadings in this case. *Id.*

## I.    Factual Background

Plaintiff Alonzo Baker, a Black man, began his employment "as a [f]irefighter for FDNY on June 12, 2017." ECF No. 62 ("Joint SMF") ¶ 5; ECF No. 66 ("Def. 56.1")[2] ¶ 7. Before being

---

[1] Defendant argues that that Plaintiff has not complied with Local Rule 56.1(d), and has therefore conceded or admitted the majority of Defendant's factual assertions present in the 56.1 statement. ECF No. 70 ("Reply") at 1–2. The Court disagrees: Plaintiff responded to each of Defendant's numbered paragraphs indicating objections and disagreement, supported by citations to the record. The Court will therefore not treat the entirety of Defendant's 56.1 statement as unopposed solely on that basis. However, Plaintiff did not comply with the Local Rules or this Court's Individual Rules by presenting new or additional material facts in a separate counterstatement of facts. Instead, Plaintiff appears to have asserted several new facts for the first time in his opposition. That is improper. The Court therefore only considers Defendant's 56.1 statement, and the record evidence raised by Plaintiff in response to that 56.1 statement.

[2] Because Plaintiff did not submit a separate 56.1 statement, the Court has defined "Def 56.1" as referring to the document that includes Plaintiff's responses.

2

assigned to Engine Company[3] ("E-") 70, in early 2023, Baker was assigned to E-286 in

Ridgewood, Queens from October 17, 2017 through November 4, 2023. Joint SMF ¶ 6. Plaintiff

transferred out of E-70 towards the end of 2023. ECF No. 67-6 at 66:5–17.

### A.  Baker's Status as a "Priority Hire"

Plaintiff was hired as a Black "priority hire." ECF No. 60-2 (the "Verified Complaint" or

"VC") ¶ 12.[4] The record reflects several instances of negative or derogatory comments being

made regarding Plaintiff's priority hire status. For instance, in October 2017, during one of

Baker's first tours after Probationary Firefighting School, Plaintiff testified that two firefighters

in his firehouse of E-286 told him that "most of the [B]lack priority [hires] are 'bags of shit and

only come on the job to take money and jobs away." ECF No. 60-2 ¶ 14. Eric Rodney (another

firefighter) testified that he knew of "rumblings" that some firefighters viewed priority hires as

people who did not deserve to be on the job and that they "got it easy." ECF No. 67-1 at 27:3–11.

Rodney testified he never heard firefighters from E-329 express that sentiment, however. *Id.* at

27:12–15. Regina Wilson—a member of the Vulcan Society, which is an organization comprised

of FDNY members who advocate for Black firefighters on the job, *see* ECF No. 67-2 at 10:19–

25—also testified that she knew of several priority hires who were "hazed" and that "a lot of

---

[3] The Court understands "Engine Company" to be another term for a firehouse where a firefighter would be located and working from.

[4] A court may consider allegations in a verified complaint in ruling on a motion for summary judgment because it is submitted under the penalties of perjury. It is therefore treated as a declaration in opposing summary judgment, and it may be considered to the extent allegations are made with personal knowledge. *Parker v. Fantasia*, 425 F. Supp. 3d 171, 175 n.1 (S.D.N.Y. 2019). As such, the Court may consider admissible statements contained in the verified complaint so long as the statements are made with personal knowledge and would otherwise be admissible. *See Walker v. Carrozzo*, 664 F. Supp. 3d 490, 504 (S.D.N.Y. 2023) ("Where a party relies on affidavits or deposition testimony to establish facts, the statements must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.") (cleaned up) (*citing DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012)).

African American firefighters" were "discriminated against." ECF No. 67-2 at 29:21–30:17. And in December 2021, Plaintiff encountered Miguel Restrepo, a firefighter; Plaintiff testified that Restrepo told him he would "have it harder than anybody else" because Plaintiff is Black and a priority hire, which "people" didn't like. ECF No. 60-5 at 27:18–25.

### B.  The April 2, 2021 Incident and Subsequent Complaint & Investigation

Over the course of his tenure as a firefighter, Baker reported several incidents and altercations that he believed were racially motivated. The first of these incidents occurred on April 2, 2021. On that date, Plaintiff attended a party at the E-286 firehouse to celebrate the promotion of Captain Richard Blasi to Chief. Joint SMF ¶ 7. Plaintiff arrived around 11 PM. *Id.* ¶ 8. Upon entering the firehouse, Plaintiff encountered Christopher Goetchius (a firefighter), and Robert Tolley (a non-FDNY employee) who were speaking to one another. *Id.* ¶ 9. Tolley, while not himself a firefighter, was in attendance because he is the brother of a fallen firefighter. *Id.* ¶ 10. Plaintiff heard Goetchius say to Tolley "You see that asshole right there? That's [Plaintiff]. Nobody likes this fucking ass. I hate him. I don't even know why the fuck he's here." *Id.* ¶ 11. Plaintiff ignored them and made rounds to greet everyone at the firehouse. *Id.* ¶ 12.

Thereafter, Plaintiff went to the "apparatus floor" and leaned against the fire truck to sign a congratulatory greeting card for Captain Blasi. *Id.* ¶ 13. As Plaintiff signed the card, Tolley approached him from behind, slammed his head into the truck, punched him in the back, and put his head in "some type of a police hold" which rendered Plaintiff unable to move. *Id.* ¶ 14. Plaintiff screamed "Get off me. Get off me; right? Who is this? Get off me. What the hell is wrong with you?" *Id.* ¶ 15. Tolley responded "I heard about you. Get your Black ass out of here. Nobody wants your kind on the job anyway. Come back here again, I'm going to fuck you up. You're not welcome here." *Id.* ¶ 16. Plaintiff continued to scream "Get off." *Id.* ¶ 17.

4

At that point, Kerron Kangal, another firefighter, ran over and pushed Tolley off Plaintiff. *Id.* ¶ 18. Kangal pushed Tolley into the kitchen, saying "What the hell is your problem? What are you doing? What the fuck is wrong with you?" *Id.* ¶ 19. Tolley responded to Kangal saying "What the hell are—wrong with me? Like, [Goetchius] said it was him. [Goetchius] said he's the fucking problem. Why is he fucking in the house? Nobody wants his kind anyway. Who are you?" *Id.* ¶ 20. In his anger, Tolley threw food, beer, and other items from off the kitchen table. *Id.* ¶ 21. In the days following the incident, Plaintiff spoke to Jerry Ross and Angel Robles (two other firefighters with the same rank as Plaintiff) about the incident. *Id.* ¶¶ 22–23. Plaintiff testified he spoke to at least one supervisor about the incident, but did not identify anyone specific. ECF No. 60-5 at 78:24–79:19.

Plaintiff also claimed he received text messages the following day from a couple attendees at the party generally acknowledging the impropriety of what had occurred, with one individual, Firefighter Jerry Ross, stating that Tolley "was dealt with." ECF No. 67-12 at DEF000181–82. Tolley also called Plaintiff on April 3, 2021 and left a voicemail apologizing for his actions and admitting he said things that were "wrong" and "based on nothing." ECF No. 67-15.

On May 26, 2021, Plaintiff reported the April 2021 incident to the FDNY's Equal Employment Opportunity Office (the "EEOO"). Joint SMF ¶ 24; ECF No. 60-7. Plaintiff was the first to report the incident, even though captains and chiefs (such as Jennifer Quinoes, a Fire Marshal, *see* ECF No. 60-5 at 21:3–4) were present during the April 2, 2021 incident. ECF No. 60-5 at 20:2–10. Don Nguyen testified that supervisors and managers who become aware of potential violations of EEOO policy have a mandatory reporting obligation. ECF No. 67-6 at 28:17–21. The EEO Case Report generated by Plaintiff's complaint largely corroborated his

version of events. It noted that Goetchius made "offensive statements" about Baker based on race. ECF No. 60-7 at DEF000597. It also notes that Baker alleged at least two individuals—Jennifer Quinoes (Fire Marshal) and Lieutenant Mayerhofer—discouraged him from making a formal complaint. *Id.* at DEF000596–97. Specifically, the report notes that Mayerhofer "discouraged him from contacting the [EEOO] or filing an EEO complaint." *Id.* at DEF000597 Quiones reportedly advised Baker "to not make an issue of the events at the party." *Id.* at DEF000596. The report also notes that Carl Italiano and Richard Blasi allegedly did not report incidents involving discrimination and violence against Baker, which presumably refers to the April 2, 2021 incident. *Id.* at DEF000597. Don Nguyen (Assistant Commissioner of the EEOO) testified that, as part of the investigation into the complaint, Defendant directed that Tolley not be permitted to attend any further events within the firehouse. ECF No. 60-8 at 50:8–16.

The EEOO conducted an investigation of the April 2021 incident in coordination with the Bureau of Investigations and Trials ("BIT")—which is under the umbrella of the Bureau of Legal Affairs ("BLA")—and interviewed several witnesses on the record. Joint SMF ¶¶ 25–26. Don Nguyen (Assistant Commissioner of the EEOO) testified that an investigation could take anywhere from a few days to a year depending on the case. ECF No. 67-6 at 119:21–120:6. Plaintiff received an acknowledgment letter on June 15, 2021 stating that the EEOO attorney, Adam Harris, would "begin the investigation shortly." ECF No. 67-11. Interviews occurred between June and September 2021. ECF No. 60-7 at DEF000604. However, even though Plaintiff received his notice letter in June 2021, the activity log on the "EEO Case Report" indicates that investigatory steps began just days after Plaintiff's May 26, 2021 report. ECF No. 60-7 at DEF000598–99. This included interim steps, such as a direction that Tolley not enter the

E-286 firehouse, and a request that Goetchius be detailed pending the investigation. *Id.* at DEF000597; ECF No. 60-8 at 85:16–24.

The record also indicates that Plaintiff submitted letters (which are not dated) to "Adam Harris," who is the same attorney that sent the June 12, 2021, acknowledgment letter. ECF No. 67-12 at DEF000113. The letter describes itself as responding to a request by Mr. Harris, and so it presumably came after June 15. *Id.* In the letter, Plaintiff identified instances with several other firefighters at E-286 who also reportedly had negative or racially charged interactions with Goetchius, some of which included firefighters leaving or asking for a transfer. *Id.* Plaintiff also noted a "prejudice atmosphere" at the E-286 firehouse, and noted facing "racist comments," fabricated stories that led to officer discipline, and having to deal with the "stigma" of having allegedly filed an EEOO complaint before first arriving. *Id.* at DEF000115.

Ultimately, the EEOO's investigation was administratively closed on September 23, 2021, because Baker had filed a discrimination complaint with the United States Equal Employment Opportunity Commission; the investigation was subsequently referred to the BLA for further handling. ECF No. 60-7 at DEF000604.

### C.  Baker's Detail to Engine Company 329 (E-329)

On May 21, 2021 (several days before he made his EEOO complaint), Plaintiff received a notification that he would be detailed, for 90 days, to E-329 in Queens from June 1, 2021, through September 7, 2021, after which he would return to E-286. Joint SMF ¶¶ 27–29. Plaintiff testified that he believed the relocation was the result of his complaint to the EEOO, and testified that E-329 was "in the middle of nowhere" and one of the "slowest firehouses on the entire FDNY job." ECF No. 60-5 at 56:3–12. Plaintiff further testified that he was told—by unspecified persons—that he was going to E-329 "because [he] opened [his] damn mouth" and made an

EEOO complaint. *Id.* at 57:23–58:2. Plaintiff also testified he spoke to Captain Italiano about the transfer, who explained he was not sending a "senior person" and that his decision was final. *Id.* at 58:9–25. Plaintiff believed Captain Italiano (who he testified was friends with Goetchius) was upset with Plaintiff because he "told what happened that night" (presumably in reference to the April 2021 incident). *Id.* at 53:1–6, 58:18–25.

As the 90-day detail came to an end on September 7, 2021, Adam Harris (the agency attorney who sent the June 2015 notice letter to Plaintiff) wrote to several FDNY employees indicating that Plaintiff's "90-day detail (unrelated to the investigation)" was ending, and that Plaintiff reported feeling uncomfortable returning to E-286 due to the pending investigation. ECF No. 60-7 at DEF000634–35. Plaintiff requested to extend his time at E-329; that request was granted. Joint SMF ¶¶ 30–31. Plaintiff was told his request would be extended 90 days "pending outcome of the investigation" into the April 2021 incident. ECF No. 60-7 at DEF000632.

Plaintiff's detail at E-329 ultimately ended in December 2021, and he was reassigned to E-331. Joint SMF ¶ 32.

### D.  The December 2021 Incident and Plaintiff's Medical Leave

The next alleged incident involving Plaintiff occurred in December 2021. Plaintiff testified that when he arrived at E-331, he encountered Miguel Restrepo, another firefighter, who helped out junior firefighters and showed them what to do. ECF No. 60-5 at 27:3–17. Plaintiff testified that Restrepo told him he would "have it harder than anybody else" because Plaintiff is Black and a priority hire, which "people" did not like. *Id.* at 27:18–25. Plaintiff testified that Restrepo further stated that Plaintiff should know it's an issue, particularly given he made an EEOO complaint, and that he was supposed to "[j]ust let it go." *Id.* at 28:1–20. Restrepo stated

Plaintiff would have a "good career" if he did not "stress with things like that." *Id.* at 28:18–20. Plaintiff also asserts he was told by Caucasian colleagues that if he continued to complain about discrimination, they would not protect him during future fires. ECF No. 60-2 ¶ 36.

Plaintiff reported Restrepo's comments to BIT Deputy Director Joseph Palazzolo. Palazzolo contacted the EEOO to inform them he had received a voicemail from Plaintiff stating that nobody at E-331 liked him because he was a priority hire. ECF No. 60-10 at DEF000224. Palazzolo reported that Plaintiff had alleged another firefighter, Miguel Restrepo, stated that he (Plaintiff) was only doing "committee work" because no one liked him, and that Plaintiff had "two strikes" against him due to his status as a "priority hire" and the fact that he previously file an EEOO complaint. Joint SMF ¶ 33. Plaintiff also claimed he found a CD-30 Transfer Form affixed to his locker, and that Plaintiff no longer wished to work at E-331. *Id.* ¶¶ 34–35. Plaintiff testified that a CD-30 Transfer Form is typically voluntarily submitted when a firefighter wants to change firehouses, and testified that his understanding was when someone else gives it to you, it means they do not want you around and that it is a hazing, bullying type of tactic. ECF No. 60-5 at 29:11–22. Plaintiff testified that the tactic was used against firefighters all the time, but especially against priority hires like himself. *Id.* at 29:23–30:11. The EEOO immediately began an investigation after receiving this report, which included, among other things, an interview with Miguel Restrepo himself. Joint SMF ¶¶ 36–37.[5] When interviewed, Restrepo largely denied Plaintiff's version of events. ECF No. 60-10 at DEF000237–39.

On December 20, 2021, Plaintiff went on medical leave, returning to work on January 6, 2022 on "light duty." Joint SMF ¶ 39. Plaintiff went on medical leave due to "personal stress"

---

[5] The EEOO's investigation into this incident was administratively closed on March 29, 2023. *Id.* ¶ 38.

from the alleged incidents described above. ECF No. 67-19 at DEF000275. While Plaintiff was

on "light duty," he was not entitled to work overtime hours. ECF No. 60-2 ¶ 37. Plaintiff testified

that firefighters could not voluntarly go on light duty, and required a reason for doing so. ECF

No. 60-5 at 54:12–19. Plaintiff went on "light duty" because of an injury he sustained affecting

his lower back, hips, and abdomen. ECF No. 60-5 at 34:11–13; Def. 56.1 ¶¶ 61–63. Plaintiff was

expected to return to "full" duty on February 22 or 23, 2023. Joint SMF ¶¶ 39–40.

### E.  The February 2023 Incident and Complaint

On February 20, 2023—around when Plaintiff was set to return to "full" duty—Plaintiff

went to E-331 to pick up his gear. *Id.* ¶ 41. Once there, Plaintiff discovered his facepiece had a

broken strap, and rested on top of his locker separate from the rest of his gear. *Id.* ¶¶ 42, 43. Each

firefighter has their own specific facepiece that is fitted to their face and provides them with

clean air to breathe when entering smoke-filled buildings. *Id.* ¶ 44. The straps on Plaintiff's

facepiece were cut and damaged. *Id.* ¶ 45. Plaintiff believed this damage to be intentional

because he recalls leaving his facepiece attached to his bunker coat and not on his locker and

because he believed the damage sustained could not have been by accident *Id.* ¶ 45; ECF No. 60-

5 at 80:1–10. Plaintiff testified he was unsure how it was cut or what tool would have been used

to cut it. ECF No. 60-5 at 80:11–20.

Plaintiff subsequently reported his suspicion to Martin Scialpi, who was the captain on

duty at E-331. Joint SMF ¶ 46. Captain Scialpi informed Plaintiff he would report his concerns to

the EEOO and order him a new facepiece. *Id.* ¶ 47. Captain Scialpi also noted that equipment

sometimes gets damaged and that he did not think it was an intentional act, but ultimately could

not say for sure what had happened. ECF No. 60-12 at DEF000208. Division Commander Daniel

X. Browne also noted that straps on facepieces come loose over time and that Baker had a

responsibility to secure his gear. *Id.* at DEF000207. Plaintiff also reported his belief to Don

Nguyen that the act was in retaliation for his prior EEOO complaints. ECF No. 67-6 at 59:14–22. Because of the issues with Plaintiff's gear at E-331, he went to E-286 to obtain his second set of gear. Joint SMF ¶ 48. Plaintiff testified he was unable to find it, and it was never recovered. *Id.* ¶ 49. Nguyen testified that Plaintiff received replacement equipment. ECF No. 67-6 at 62:23–25.

Plaintiff believed the broken facepiece at E-331 and missing gear at E-286 was motivated by discrimination and retaliation, and he reported the incidents to the EEOO on February 20, 2023. Joint SMF ¶ 50. The EEOO opened an investigation the next day on February 21. *Id.* The EEOO investigation was administratively closed and referred to BIT and BLDA on March 23, 2023 after Plaintiff amended his complaint in this action to include the alleged February 2023 incidents. Def. 56.1 ¶ 87. However, Don Nguyen testified the investigation still technically remained open and that he requested the investigation continue despite the external filing. ECF No. 67-6 at 92:14–21.

### F. Assignment to E-70

Following the incident at E-331, Defendant worked with Plaintiff to get him reassigned to another firehouse. Nguyen testified that he corresponded with Nguyen about "potential landing spots" for Plaintiff because he wanted to ensure Plaintiff ended up somewhere that "to some extent" considered his preferences. *Id.* at 64:3–10. Nguyen would then try and see if "there was something on the operational side" that could accommodate Plaintiff and ensure he was "working in a place . . . where he could proceed with his career." *Id.* at 64:11–64:17. Eventually, Nguyen learned that Plaintiff no longer wanted to communicate with him, and so he brought in Lieutenant Tracy Lewis as an intermediary to discuss where Plaintiff could work and "where it made sense operationally." *Id.* at 65:8–15. Plaintiff was ultimately assigned to E-70 in City Island, Bronx. Joint SMF ¶ 51. Nguyen testified that they did a "check on the place to ensure there was no recent . . . EEO issues or EEO complaints or any ongoing issues there that would . .

11

. make it difficult for [Plaintiff]." ECF No. 67-6 at 65:22–66:4. Nguyen testified that Plaintiff did not want to go to E-70–that it was also far from his home—but requested a transfer which went through in Fall 2023. *Id.* at 66:5–17.

### G. Allegations of Discrimination by Other Firefighters

Plaintiff also complained of, and the record indicates, racial discrimination and remarks against other firefighters. For instance, as part of May 26, 2021 report, Plaintiff claimed (in a letter to Adam Harris, an agency attorney) that other firefighters had also experienced incidents with Goethius, including enduring racist and "hateful" comments and remarks. ECF No. 67-12 at DEF000113. Regina Wilson testified that she knew that several priority hires were hazed and that "a lot of African American firefighters" were "discriminated against." ECF No. 67-2 at 29:21–30:17.

Some of this discrimination was similar to that alleged by Plaintiff. For instance, Eric Rodney testified he heard of firefighters "doing something" to other firefighters' gear. ECF No. 67-1 at 32:16–33:5. Regina Wilson also testified she knew of instances where a firefighter's gear was intentionally damaged by another person. ECF No. 67-2 at 49:18–23. In each of those instances, it was a Black firefighter that had their gear tampered with. *Id.* at 50:4–14. However, Wilson clarified that in most instances, the fire department's finding of the cause was "unsubstantiated" and she knew of only one case of a finding of intentionality. *Id.* at 50:10–51:9.

## II.   Procedural History

On July 6, 2021, Plaintiff, through counsel, sent a notice letter to the EEOO stating his intention to sue for race discrimination and retaliation. ECF No. 67-8. On May 12, 2022, Plaintiff filed this action alleging that Defendant unlawfully discriminated and retaliated against him on the basis of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the New York City State Human Rights Law, N.Y. EXEC. LAW § 296 (the

"NYSHRL"), and the New York City Human Rights Law, N.Y.C. ADMIN. CODE § 8-107 (the "NYCHRL"). ECF No. 1. Plaintiff filed an Amended Complaint on February 23, 2023 asserting the same claims. ECF No. 29. Defendant filed an answer on March 21, 2023. ECF No. 32. Defendant filed the instant motion for summary judgment on December 20, 2024. ECF Nos. 59, 60 ("Mem."). Plaintiff opposed on January 17, 2025. ECF No. 65 ("Opp.").

## LEGAL STANDARD

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the burden of demonstrating the absence of a question of material fact. *Celotex Corp.*, 477 U.S. at 22. If the movant meets its initial burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal citation omitted).

When the movant properly supports its motion with evidentiary materials, the opposing party must establish a genuine issue of fact by citing "particular parts of materials in the record" to survive the summary judgment motion. Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "Only disputes over facts that might affect the outcome of the suit under the governing law" preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, a court is "required to resolve all ambiguities and draw all permissible factual inferences in favor

of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (quoting *Stern v. Trustees of Columbia Univ. in City of New York*, 131 F.3d 305, 312 (2d Cir. 1997)).

"The function of the district court in considering [a] motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kee v. City of New York*, 12 F.4th 150, 166–67 (2d Cir. 2021) (internal quotation marks and citation omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021) (internal citation omitted).

Specifically as to discrimination cases, "because of the likelihood that direct evidence of an employer's discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 258 (2d Cir. 2023) (cleaned up). For that reason, the Second Circuit has "repeatedly expressed the need for caution about granting summary judgment to an employer in a discrimination case where . . . the merits turn on a dispute as to the employer's intent." *Id.* at 258.

## DISCUSSION

The discussion below proceeds in five sections. First, the Court determines that Defendant is capable of being sued because Plaintiff properly served and named the City of New York as a defendant. Second, the Court finds that Plaintiff's federal race discrimination claim does not survive summary judgment because he has not adduced evidence to permit a reasonable factfinder to conclude that he suffered an adverse employment action under circumstances giving

rise to an inference of race discrimination for which Defendant could be vicariously responsible. Third, the Court grants summary judgment to Defendant on Plaintiff's federal retaliation claim because Plaintiff has failed to adduce evidence suggesting, at the third step of *McDonnell*, that Defendant's proffered non-discriminatory reasons were merely pretextual. Fourth, the Court denies summary judgment to Defendant on Plaintiff's hostile work environment claims because Plaintiff has adduced sufficient evidence to demonstrate the existence of an abusive working environment, and negligence by Defendant in responding to that environment. Finally, the Court proceeds to analyze Plaintiff's claims under the NYCHRL and NYSHRL, finding that the hostile work environment and race discrimination claims can proceed under those statutes, but that retaliation cannot. The Court therefore GRANTS Defendant's motion for summary judgment in part and DENIES it in part.

## I.      Defendant Is a Suable Entity

A threshold issue for this Court is whether the named defendant in this action, "City of New York, Fire Department" can be sued. Defendant argues that Plaintiff has *de facto* named the Fire Department of New York as a Defendant, which, per the New York City Charter, is not a suable entity. Mem. at 4. Plaintiff responds that the addition of "Fire Department" to the caption merely indicates the specific agency at issue, but that he correctly named the "City of New York" as a defendant. Opp. at 5. The Court agrees with Plaintiff and will not dismiss the case on this basis.

To be sure, Section 396 of the New York City Charter provides that city agencies—like federal and state agencies—are immune from suit, and any such actions "shall be brought in the name of the City of New York and not in that of any agency." New York City, N.Y., Charter § 396. However, Plaintiff properly named, served, and provided notice to, the City of New York as

a proper defendant in this action—service, which Corporation Counsel, only on behalf of the City, accepted. ECF No. 8 (accepting service "only for the City of New York").

Because the City of New York, through Corporation Counsel, "was on notice that [P]laintiff intended to seek a judgment against it" and, because in any event, Plaintiff named the correct entity, dismissal on this ground would be inappropriate. *See, e.g., Rivera v. N.Y.C. Dep't of Sanitation*, 122 N.Y.S.3d 890, 890 (1st Dep't 2020) (reversing dismissal of complaint because City was not prejudiced by mis-description of defendant name); *accord Matter of Wesco Ins. Co. v. N.Y.C. Dep't of Bldgs.*, 82 Misc. 3d 1229(A), *1 n.1, 208 N.Y.S.3d 481 (Sup. Ct. Apr. 5, 2025) ("When a plaintiff has properly served the City of New York, and the Corporation Counsel has answered on behalf of defendant, naming a City department as defendant rather than the City itself is not a ground for dismissal.").

## II.    Plaintiff's Title VII Discrimination Claim Does Not Survive Summary Judgment

Defendant seeks summary judgment on the race discrimination claim arguing that Plaintiff cannot create a dispute of fact that he suffered any adverse actions under circumstances giving rise to an inference of discriminatory intent. Mem. at 5–15.

Section 703(a)(1) of Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII does not provide for individual liability, but an employer "can be held vicariously liable under Title VII for the unlawful conduct of supervisors with the capacity to take tangible employment actions." *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 87 (E.D.N.Y. 2020) (cleaned up).

Under Title VII, "[a] plaintiff may prove discrimination either by direct evidence of intent to discriminate or 'indirectly showing circumstances giving rise to an inference of

discrimination.'" *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 270 (2d Cir. 2023) (quoting *Vega v. Hempstead Union Free Sch. Dist*., 801 F.3d 72, 87 (2d Cir. 2015)). "To prove discrimination indirectly, a plaintiff can meet the requirements of the *McDonnell Douglas* burden shifting framework or by otherwise creating a 'mosaic' of intentional discrimination by identifying 'bits and pieces of evidence' that together give rise to an inference of discrimination." *Id.* (cleaned up).

The first step of *McDonnell* imposes a "de minimis" burden on Plaintiff to establish a prima facie case, *Abdu-Brisson v. Delta Air Lines, Inc*., 239 F.3d 456, 467 (2d Cir. 2001), and the Second Circuit has instructed courts to "remember this exceedingly low burden." *Dawson v. New York City Transit Authority*, 624 F. App'x 763, 770 (2d Cir. 2015) (internal citations omitted) (summary order). To establish a prima facie case of race discrimination under Title VII, Plaintiff must demonstrate: (1) he belongs to a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).

With respect to the third element of a prima facie case (adversity), historically, a plaintiff needed to allege that "he experienced a 'materially adverse change' in the terms of [his] employment." *Sanders v. N.Y.C. Hum. Res. Admin*., 361 F.3d 749, 755 (2d Cir. 2004) (internal citation omitted); *Littlejohn*, 795 F.3d at 312 n.10. However, as the Supreme Court recently clarified, Title VII no longer requires this high standard. Instead, a plaintiff "need show only some injury respecting her employment terms or conditions." *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 359 (2024). The alleged change "must have left [the plaintiff] worse off, but [it] need not have left her significantly" worse off. *Id.* In short, post-*Muldrow*, "[a]n adverse

17

employment action involves some harm or injury to the employee's conditions of employment." *Garrison v. Am. Sugar Ref., Inc.*, No. 21-CV-10917 (VB), 2025 WL 1796453, at *6 (S.D.N.Y. June 25, 2025).

For the second step of *McDonnell*, if Baker can make out a prima facie case, the burden then shifts to Defendant to "proffer some legitimate nondiscriminatory reason for the adverse action." *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010).

For the third and final step of *McDonnell*, Baker must show that Defendant's articulated reason is pretext for discrimination. *See Carr v. New York City Transit Auth.*, 76 F.4th 172, 177 (2d Cir. 2023). In the end, "[t]he plaintiff bears 'the ultimate burden of persuading the court that she has been the victim of intentional discrimination.'" *Id.* (quoting *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256 (1981)).

The parties do not appear to dispute the first two prima facie elements: that Baker belongs to a protected class (race), and that he was qualified for his position as a firefighter. The Court therefore only considers, as part of the first step of *McDonnell*, whether Plaintiff has made out a prima facie case with respect to the third and fourth elements as to each of the alleged incidents.

As set forth below, the Court finds that Plaintiff's Title VII discrimination claim does not survive summary judgment because, with respect to the incidents, Plaintiff either (1) has not adduced evidence to allow a reasonable jury to conclude that he suffered an adverse employment action under circumstances supporting an inference of discriminatory intent for which Defendant can be liable; or (2) has not adduced sufficient evidence to demonstrate that Defendant's stated non-discriminatory reasons were pretextual. The Title VII race discrimination claim is therefore dismissed.

### A.  April 2021 Incident

Plaintiff cannot make out a prima facie case of discrimination based on the April 2021 incident because he did not suffer an adverse employment action. As discussed above, Plaintiff "need show only some injury respecting h[is] employment terms or conditions" and that the alleged change left him "worse off." *Muldrow*, 601 U.S. at 359.

Plaintiff has not adduced any evidence demonstrating that an adverse employment action occurred during, or immediately following, the April 2021 incident. To be sure, it appears undisputed that the behavior exhibited by Goetchius and Tolley was wildly inappropriate, and as discussed below, relevant to Plaintiff's hostile work environment claim. But verbal abuse by itself is typically insufficient to constitute an adverse employment action for Title VII purposes because "negative or otherwise insulting statements are hardly even actions, let alone adverse actions." *Scott v. City of N.Y. Dep't of Corr.*, 641 F. Supp. 2d 211, 231 (S.D.N.Y. 2009) (cleaned up); *accord Muniz v. City of New York*, No. 20-CV-9223 (JPC), 2023 WL 6294169, at *8 (S.D.N.Y. Sept. 27, 2023). Indeed, Plaintiff does not even appear to assert that Goetchius's comments amounted to an adverse employment action. *See* Opp. at 9.

At minimum, Plaintiff must show a connection between the derogatory remarks and some adverse action. But here, the only potentially relevant adverse action is the subsequent detail to E-329 that came two months later. There is no evidence Goetchius had any bearing on that decision, or that his comments were part of Captain Italiano's eventual transfer decision.

More importantly, neither Goetchius nor Tolley had decision-making or supervisory authority over Plaintiff. *See Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 222 (2d Cir. 2004) (finding that evidence of plaintiff's colleague making racially derogatory remarks was insufficient to raise an inference of race discrimination because plaintiff had adduced no

evidence that the colleague played a role in the decision to terminate plaintiff, and where there was no evidence of bias on the part of those who did decide to terminate plaintiff); *accord Watson v. Richmond Univ. Med. Ctr.*, 408 F. Supp. 3d 249, 263 (E.D.N.Y. 2019) (finding no issue of fact on discriminatory intent as to alleged comments made by one of plaintiff's co-workers where it was undisputed that the individual was not the plaintiff's supervisor or involved in any decision related to the plaintiff's employment). Indeed, Tolley was not an FDNY employee, and Plaintiff has adduced no evidence indicating that the City had any degree of control over his behavior. *See Menaker v. Hofstra Univ.*, 935 F.3d 20, 39 (2d Cir. 2019) (cleaned up) ("[I]n the Title VII context, the conduct of certain non-employees may be imputed to the employer where (1) the employer exercises a 'high degree of control over the behavior 'of the non-employee, and (2) the employer's 'own negligence' permits or facilitates that non-employee's discrimination.").

As such, Plaintiff's Title VII race discrimination claim as to this incident fails as a matter of law.

### B.  Detail to E-329

Plaintiff similarly fails to make out a prima facie case of race discrimination based on his detail to E-329. Plaintiff testified that E-329 was one of the "slowest firehouses on the entire FDNY job" and it was "very far" from his home and in the "middle of nowhere." ECF No. 60-5 at 56:1–10. To be sure, "[a]n internal transfer can be an adverse employment action if accompanied by a negative change in the terms and conditions of employment." *Stancu v. New York City/Parks Dept.*, No. 20-CV-10371 (ALC), 2022 WL 4581844, at *4 (S.D.N.Y. Sept. 29, 2022) (citing *Terry v. Ashcroft*, 336 F.3d 128, 144 (2d Cir. 2003)). And to reiterate, *Muldrow* lessened a plaintiff's burden, requiring that they only be "worse off" by the relevant action. Plaintiff's testimony about E-329 being one of the "slowest" firehouses in FDNY, at least arguably, makes it a less prestigious assignment, which could satisfy *Muldrow. See, e.g., Dipiano*

*v. New York City Department of Education*, No. 24-CV-4801, 2025 WL 2645548, *7 (E.D.N.Y. Sept. 15, 2025).

However, Defendant satisfies the second step of *McDonnell* to proffer some legitimate non-discriminatory reason for the adverse action—namely, that it was Plaintiff's "summer detail," and that his direct supervisor made the decision to send a junior firefighter like Plaintiff (a fact which is consistent with Plaintiff's own description of E-329 as being slow and a bit more remote).

Baker has not adduced sufficient evidence, at the third step of *McDonnell*, showing that proffered reason to be pretextual. For example, he has not shown that summer transfers were uncommon, that he had never been detailed for that reason, that other similarly situated junior firefighters outside his protected class were not being detailed, that his supervisor exceeded his authority (or acted contrary to policy), or any other evidence to suggest the stated non-discriminatory reason was pretextual. *See Rochelle v. AutoZoners, LLC*, No. 21-CV-01220 (PMH), 2023 WL 5935835, at *12 (S.D.N.Y. Sept. 12, 2023) (granting summary judgment as to discrimination claims where plaintiff failed to satisfy third step of *McDonnell*), *reconsideration denied*, No. 21-CV-01220 (PMH), 2023 WL 7019013 (S.D.N.Y. Oct. 25, 2023), *and appeal withdrawn*, No. 23-7847, 2024 WL 2704078 (2d Cir. Mar. 6, 2024). Plaintiff only points to an email, from Adam Harris, stating that Plaintiff's detail was being extended "pending investigation"—but this relates to *his requested extension*, not the initial assignment. ECF No. 60-7 at DEF000632, 634–35. The detail to E-329 therefore similarly cannot sustain a claim for race discrimination under Title VII. *See Champion v. N.Y. State Office of Parks, Recreation & Historic Pres.*, 500 F. Supp. 3d 26, 43 (S.D.N.Y. 2020) (granting summary judgment to

defendant where Plaintiff failed to come forward with evidence "impeaching as pretextual [Defendant's] stated reasons for [the adverse action].").

### C.  December 2021 Incident & "Light Duty"

Plaintiff also cannot show a prima facie case of race discrimination by reference to the December 2021 incident because he did not suffer an adverse employment action. Plaintiff claims that, upon arriving at E-331, he was subjected to "discriminatory commentary about his race and priority status" by Miguel Restrepo (another firefighter). Opp. at 14. He also claims he found a CD-30 Transfer Form affixed to his locker, and testified that when someone else gives you that form, it means they do not want you around and that it is a hazing, bullying type of tactic. *Id.*; *see* ECF No. 60-5 at 29:11–22. Plaintiff claims he suffered "negative consequences" because he went on medical leave and was placed on light duty, which he claims resulted from Restrepo's comments and the CD-30 Form. Opp. at 14.

For the same reasons discussed above regarding the April 2021 incident, Restrepo's alleged comments themselves do not constitute an adverse employment action, particularly given, Restrepo, unlike Captain Italiano, was not Plaintiff's supervisor. And the CD-30 Transfer Form affixed to Plaintiff's locker similarly does not indicate any material or substantial change to the terms of Plaintiff's employment.

Plaintiff being placed on light duty, however, can qualify as an adverse employment action, because he has adduced evidence indicating that while on light duty, he was not eligible to receive overtime. ECF No. 60-2 ¶ 37. That fact suffices to show he was made "worse off" with respect to a condition of his employment—his pay. However, Plaintiff has not adduced evidence to support the fourth element of a prima facie case: that this occurred under circumstances giving rise to an inference of discriminatory intent. Plaintiff himself testified that he went on "light duty" because of an injury. ECF No. 60-5 at 33:13–34:13, and that firefighters could not

voluntarily go on light duty, but required a reason for doing so. *Id.* at 54:12–19. Plaintiff has thus not presented a genuine issue of material fact surrounding his light duty placement.

Moreover, even if Plaintiff's placement on light duty could somehow be the basis for a prima facie case of racial discrimination, Defendant has proffered a non-discriminatory reason for the placement: that Plaintiff, by his own admission, had an injury affecting his movement, and light duty would slowly reintegrate him back to work. Plaintiff has not adduced any evidence to indicate that stated reason was pretextual. As such, Plaintiff's medical leave and placement on light duty do not support a claim of race discrimination.

### D. February 2023 Incidents

Finally, the Court finds that Plaintiff has failed to adduce evidence to create an issue of fact with respect to the February 2023 incidents. Even if Plaintiff could make out a prima facie case, there is no evidence from which to impute liability to Defendant with respect to this incident. Plaintiff's gear was found, on his return to work, to be intentionally damaged and other gear was missing altogether. However, besides speculation, Plaintiff has not adduced evidence to permit a reasonable jury to find that a supervisor damaged his gear so as to make Defendant automatically vicariously liable. Indeed, this would be inconsistent with the weight of the evidence Plaintiff has adduced which largely concerns treatment by his co-workers, not supervisors. And assuming a non-supervisor tampered with the gear, Plaintiff has not adduced evidence showing a negligent response by Defendant. Indeed, when Plaintiff raised the issue of the damaged gear to Captain Scialpi, Scialpi informed Plaintiff he would report his concerns to the EEOO and order him a new facepiece, acts which are inconsistent with negligence (and it is undisputed that Plaintiff received replacement gear). Joint SMF ¶ 46–47; ECF No. 67-6 at 62:23–25.

For the aforementioned reasons, Plaintiff's Title VII race discrimination claim does not survive summary judgment.

### III.    Plaintiff's Title VII Retaliation Claim Does Not Survive Summary Judgment

The *McDonnell* three step framework also applies to Plaintiff's retaliation claim under Title VII. *Carr*, 76 F.4th at 178. To establish a prima facie case of retaliation, a plaintiff must demonstrate that (1) she engaged in a protected activity, (2) the defendant was aware of that activity, (3) she was subjected to a retaliatory action, or a series of retaliatory actions, that were materially adverse, and (4) there was a causal connection between the protected activity and the materially adverse action or actions. *Id.* at 180. To establish causation under Title VII, a plaintiff must show that retaliation was the "but for" reason for the adverse employment action. *Tafolla v. Heilig*, 80 F.4th 111, 125 (2d Cir. 2023). "A causal connection [between the protected activity and the adverse action] can be shown either '(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'" *Natofsky v. City of New York*, 921 F.3d 337, 353 (2d Cir. 2019) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015)).

The Title VII retaliation analysis presents two key differences from the above race discrimination analysis. First, while *Muldrow* lessened the "adverse" requirement for discrimination claims, the Supreme Court explicitly upheld the requirement that "retaliatory action" must be materially adverse, meaning that it causes "significant harm." *Muldrow*, 601 U.S. at 357 (cleaned up). The Supreme Court further explained that the anti-retaliation provisions are "meant to capture those (and only those) employer actions serious enough to dissuade a

reasonable worker from making or supporting a [protected activity]." *Id.* (internal citation omitted).

The second key difference is that a showing of "adversity" for a retaliation claim differs from "adversity" for a discrimination claim. Whereas, as described above, a Title VII discrimination claim requires that a plaintiff allege they were made worse off due to the alleged discriminatory conduct, for retaliation, any action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination" may constitute an adverse employment action supporting a claim for retaliation. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).

Plaintiff does not attempt to argue that the December 2021 incidents constitute retaliation under Title VII, *see* Opp. at 21–22, and so the Court only considers his detail to E-329, the February 2023 incidents, and his final reassignment to E-70.

### A. Detail to E-329

Plaintiff claims he was detailed to E-329 in retaliation for making an EEOO complaint concerning the April 2021 incident. Opp. at 20. "Protected activity includes opposing an unlawful employment practice or otherwise making a charge, testifying, assisting, or participating 'in any manner in an investigation, proceeding, or hearing.'" *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 275 (2d Cir. 2023) (quoting *White*, 548 U.S at 62).

Undoubtedly, Plaintiff's EEOO complaint regarding the April 2021 incident qualifies as "protected activity" within the meaning of Title VII. But Plaintiff filed the complaint on May 26, 2021—about a week *after* he received notice that he was being detailed. "It is well-settled that an adverse employment action cannot serve as the basis for a retaliation claim if the action was set in motion before a plaintiff engaged in protected activity." *Cayemittes v. City of New York Dept.*

*of Housing Preservation and Development*, 974 F. Supp. 2d 240, 262 (S.D.N.Y. 2013) (citing *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) and *Tomasino v. St. John's Univ.*, 476 F. App'x 923, 925 (2d Cir. 2012)).

Plaintiff, however, points out that the record indicates he reported the April 2021 incident to supervisors shortly after its occurrence. He has also adduced evidence that he complained of discrimination to Captain Italiano, and that he alleged Italiano "did not report incidents involving discrimination and violence against [him]." ECF No. 60-7 at DEF000597. Construed in the light most favorable to Plaintiff as the non-movant, a reasonable jury could find that Plaintiff specifically complained of the April 2021 incident to Captain Italiano.

However, as noted above, Plaintiff's Title VII retaliation claim is subject to the same burden shifting framework as the discrimination claim. The Court has already determined that Defendant offered a justified non-discriminatory reason for the transfer, and Plaintiff has failed to adduce evidence to demonstrate the proffered reason is pretextual. Plaintiff's detail to E-329 therefore also does not support a claim of retaliation under Title VII.

### B. February 2023 Incidents

The Court finds that the February 2023 incidents cannot support a retaliation claim for substantially similar reasons as identified above. Plaintiff has not and cannot identify who damaged his gear and why that occurred. Without any evidence or proof as to who would be responsible, Plaintiff cannot establish, for instance, whether that firefighter was "aware" of his protected activities, or assess whether such acts were the "but-for" cause of any act. Accordingly, this incident also fails to support a claim of retaliation.

### C. Reassignment to E-70

Plaintiff cannot satisfy his burden under *McDonnell* for a retaliation claim based on his reassignment to E-70. Plaintiff asserts that, after he filed an EEOO complaint regarding the February 2023 incidents, Defendant retaliated against him by assigning him to E-70 in the Bronx. Opp. at 24–25. Plaintiff had adduced evidence sufficient to satisfy the first two elements: that he engaged in protected activity (the EEOO complaint) and the Defendant was aware of that activity.

But Plaintiff has not adduced evidence to indicate any significant, or even notable, issues with E-70—aside from it not being his preference—that would indicate any adversity to satisfy the third element of a prima facie retaliation claim. Even assuming Plaintiff could make out a prima facie case—that his reassignment to E-70 constituted an adverse employment action, and that Defendant would not have transferred him "but for" his race—Defendant has proffered a non-retaliatory reason for his reassignment: Plaintiff himself stated he did not want to go back to his old firehouse, and he corresponded regularly with Don Nguyen to find an assignment that balanced operational needs with his preferences. Nguyen testified that Defendant was intentionally trying to place Plaintiff somewhere that was best for his career which aligned with his preferences while also taking account of operational needs. *See supra*, Background § I(F). Plaintiff proffers no evidence, beyond speculation, "demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in [Defendant's] proffered legitimate, nonretaliatory reasons" for his assignment to E-70. *Toombs v. New York City Hous. Auth.*, 830 F. App'x 665, 668 (2d Cir. 2020) (citing *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013)). He therefore fails to satisfy his burden under *McDonnell* that the specific assignment to E-70 amounted to discriminatory treatment, or resulted from discriminatory or retaliatory animus.

Defendant is therefore granted summary judgment as to the Title VII retaliation claims.

## IV.  Plaintiff's Title VII Hostile Work Environment Claim Survives Summary Judgment

Defendant also seeks summary judgment on Plaintiff's hostile work environment claim.[6] A hostile work environment claim does not employ the *McDonnell-Douglas* framework. Rather, to survive summary judgment on a claim of hostile work environment harassment, a plaintiff must "produce evidence that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 261 (2d Cir. 2023) (internal citation omitted). This analysis employs a "totality of the circumstances approach" to evaluate whether an environment is hostile and abusive, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 262 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

Isolated incidents of harassment ordinarily will not suffice, but a single act of harassment or discrimination can create a hostile work environment if it "works a transformation of the plaintiff's workplace." *Id.* (quoting *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004). For either route, a plaintiff must also show that "the hostile conduct occurred because of a protected characteristic." *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015). The analysis also invokes a subjective and objective element: "the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must

---

[6] Although it is unclear whether Plaintiff has properly asserted this claim (given the Verified Complaint only makes passing references to it), Defendant did not raise this argument as an issue and both parties briefed the facts under hostile work environment (*see* Opp. at 5–18; Reply at 2–8), indicating that it is appropriate for the Court to consider this claim.

subjectively perceive the work environment to be abusive." *Bentley v. AutoZoners, LLC*, 935

F.3d 76, 91 (2d Cir. 2019) (quoting *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014)).

Moreover, to hold an employer liable for a hostile work environment, federal law requires

the plaintiff to show "a specific basis for imputing the conduct creating the hostile work

environment to the employer." *Summa v. Hofstra Univ.*, 708 F.3d 115, 124 (2d Cir. 2013)

(internal quotation marks omitted). Two bases exist for doing so: vicarious liability where an

employer's supervisor has created the hostile environment, *see Wiercinski v. Mangia 57, Inc.*,

787 F.3d 106, 113 (2d Cir. 2015); and "negligence if a co-worker who is not a supervisor has

created the hostile environment, and the employer, upon becoming aware of the misconduct, fails

to remedy it." *Bentley*, 935 F.3d at 90–91 (internal citation omitted); *see also Newbury v. City of*

*Niagara Falls*, 2025 WL 323340, at *3 (2d Cir. Jan. 29, 2025) ("[W]hen the [alleged] harassment

is attributable to a coworker, rather than a supervisor, the employer will be held liable only for its

own negligence.") (citing *Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir. 2009)). "To demonstrate

such negligence, a plaintiff must adduce evidence that the employer failed to provide a

reasonable avenue for complaint or that it knew, or in the exercise of reasonable care should have

known, about the harassment yet failed to take appropriate remedial action." *Bentley*, 935 F.3d at

92 (cleaned up).

### A.  Plaintiff's Work Environment

The Court now evaluates the incidents, first considering conduct attributable to

supervisors, then those committed by non-supervisors, and ultimately determines that Plaintiff

has adduced enough evidence demonstrating the existence of a hostile work environment. Before

doing so, however, the Court addresses one preliminary issue: Defendant's contention that

certain of the alleged incidents fall outside the applicable statute of limitations because Plaintiff

filed suit in 2022. Reply at 3. The Court may properly consider alleged incidents as early as 2017. "A common type of claim subject to the continuing violation doctrine, and the one relevant to this case, is a hostile work environment claim." *Olivieri v. Stifel, Nicolaus & Co., Inc.,* 112 F.4th 74, 88 (2d Cir. 2024). "A hostile work environment generally doesn't occur on any one day; it emerges over a series of days or perhaps years . . . [and] [a]s a result, the continuing violation doctrine provides that such claims do not accrue—and the statute of limitations period does not begin to run—until the last discriminatory act in furtherance of the hostile work environment." *Id.* (cleaned up). Here, the last alleged acts occurred in 2023. *See supra,* Background §§ I (E)–(F). Everything prior to 2023 may therefore properly be considered as part of the Court's analysis.

Turning then to analysis of alleged incidents, the actions attributable to supervisors—Plaintiff's detail to E-329, Plaintiff's transfer to E-70, and being placed on light duty—do not, individually, or collectively, support a hostile work environment claim. Given, among other things, Plaintiff voluntarily went on medical leave, and asked for a transfer which led to his assignment to E-70, this could hardly be construed as indicating severe, pervasive, or continuous conduct that transformed Plaintiff's workplace into an "abusive working environment." *Newbury*, 2025 WL 323340, at *3. None of these single instances could be qualified as extraordinarily severe on their own, and Plaintiff cites no authority supporting that conclusion. *See id.* (affirming summary judgment for hostile work environment claim where supervisor called the plaintiff "stupid" and "a piece of shit."). Nor has Plaintiff adduced evidence to permit the inference that these events occurred *because of* his race.

Considering the totality of non-supervisory incidents, however, Plaintiff has adduced sufficient evidence to support such a claim. Starting in 2017, just as Plaintiff started his career,

30

Plaintiff testified that two firefighters in his firehouse of E-286 told him that "most of the [B]lack priority [hires] are 'bags of shit and only come on the job to take money and jobs away." ECF No. 60-2 ¶ 14. In April 2021, he walked into a party only to overhear Goetchius use racial language and say "nobody" likes him, and then be verbally and physically assaulted by Tolley, a non-employee. *See supra*, Background § I(B). In the wake of that incident, he had supervisors—individuals designed to look out for and protect him—encourage him to keep the matter private, and who failed to fulfill their own mandatory reporting obligations. *Id.* All the while, he witnessed his colleagues continue to socialize with Tolley, and went nearly two months with no apparent action taken against either Goetchius or Tolley. *Id.* Plaintiff also noted a "prejudice atmosphere" at the E-286 firehouse, and noted facing "racist comments," fabricated stories that led to him being wrongfully disciplined, and having to deal with the "stigma" of having allegedly filed an EEOO complaint before first arriving. ECF No. 60-7 at DEF000115. His concern was serious enough that he requested an extension of his detail to E-90 despite not wanting to go there in the first place. ECF No. 60-7 at DEF000634–35; ECF No. 60-5 at 56:3–12.

Later that year, Plaintiff found himself at a new firehouse, where the first thing he is advised of by Restrepo is that he already has "strikes" against him because his future co-workers would not like the fact that he is a priority hire and made an EEOO complaint. ECF No. 60-5 at 27:3–28:20. Plaintiff then finds a transfer form affixed to his locker, which he testified is a hazing, bullying type of tactic. ECF No. 60-5 at 29:11–22. And Plaintiff was told by White colleagues that if he continued to complain about discrimination, they would not protect him during future fires. ECF No. 60-2 ¶ 36. Plaintiff goes on medical leave as a result, due to "personal stress," ECF No. 67-19 at DEF000275, and when he returns in February 2023, he finds his safety gear damaged with no apparent explanation. Joint SMF ¶¶ 42–45.

This evidence more than suffices to establish a hostile work environment, because all that is required is that "the environment reasonably be perceived, and is perceived, as hostile or abusive." *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 268 (2d Cir. 2023) (cleaned up). Drawing all inferences in Baker's favor, a reasonable jury could find that Plaintiff was subjected to a hostile work environment based on race.

### B. Defendant's Liability

The Court must next consider whether, and to what extent, Defendant can be *liable* for this hostile work environment. Because the alleged hostile work environment turns on the acts and remarks of non-supervisors, Plaintiff must have adduced evidence of negligence by Defendant in acting to investigate or remedy that environment. *See Newbury v. City of Niagara Falls*, 2025 WL 323340, at *3 (2d Cir. Jan. 29, 2025) ("[W]hen the [alleged] harassment is attributable to a coworker, rather than a supervisor, the employer will be held liable only for its own negligence.") (citing *Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir. 2009)). "To demonstrate such negligence, a plaintiff must adduce evidence that the employer failed to provide a reasonable avenue for complaint or that it knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action." *Bentley*, 935 F.3d at 92 (cleaned up).

Plaintiff has adduced evidence by which a reasonable jury could find some negligence by Defendant. For instance, following the April 2021 incident, supervisors in attendance failed to satisfy their mandatory reporting obligations, and in fact, two of them actively sought to deter Plaintiff from making a complaint. ECF No. 60-7 at DEF000596–97. This can hardly be construed as immediate and corrective action. It was only after the formal complaint by Plaintiff that Tolley was banned from the firehouse, and a request went in for Goetchius to be detailed.

*Id.*; ECF No. 60-8 at 85:16–24. In addition, the EEOO case report also noted that Plaintiff claimed that both Captain Italiano and Captain (and then Chief) Richard Blasi allegedly did not report incidents involving discrimination and violence against him, which presumably refers to the April 2, 2021 incident. ECF No. 60-7 at DEF000597. Defendant has not pointed to any evidence regarding any investigation or follow-up as to those assertions.

In short, genuine issues of fact remain regarding Plaintiff's hostile work environment claim, and the sufficiency of Defendant's response to certain instances. This claim therefore survives summary judgment.

## V.    Certain of Plaintiff's NYSHRL and NYCHRL Claims Survive Summary Judgment

The Second Circuit has instructed that "[c]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims." *Luo v. AIK Renovation Inc*., No. 23-CV-5878 (LJL), 2024 WL 4444283, at *15 (S.D.N.Y. Oct. 8, 2024) (cleaned up) (citing *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc*., 715 F.3d 102, 109 (2d Cir. 2013)). The NYSHRL historically utilized the same standard as Title VII, but it was amended in 2019 to align more closely with the NYCHRL's more liberal pleading standard. Specifically, the amendment directs courts to construe the NYSHRL "liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of [the NYSHRL], have been so construed." N.Y. EXEC. LAW § 300. The Court will therefore analyze claims under both statutes by applying the NYCHRL's liberal standard. *See Edelman v. NYU Langone Health Sys.*, 141 F.4th 28, 45 (2d Cir. 2025); *Syeed v. Bloomberg L.P*., 41 N.Y.3d 446, 451 (2024) (construing NYSHRL and NYCHRL claims together and instructing that courts "must construe the Human

Rights Laws broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." (cleaned up)).

Plaintiff's claims pursuant to the NYSHRL and NYCHRL are subject to the same burden-shifting *McDonnell* framework as Title VII. *See Howard v. Consol. Edison Co. of New York, Inc*., 2023 WL 8270808, at *1 (2d Cir. Nov. 30, 2023) (noting that NYSHRL claims are subject to *McDonnell*); *King v. City of New York*, 581 F. Supp. 3d 559, 578 (S.D.N.Y. 2022) (citing *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010)) (noting the same as to NYCHRL), *aff'd*, No. 22-231, 2023 WL 2398679 (2d Cir. Mar. 8, 2023). "[S]ummary judgment is [only] appropriate if the record establishes as a matter of law that discrimination . . . played no role in the defendant's actions." *Ya-Chen Chen v. City University of New York*, 805 F.3d 59, 76 (2d Cir. 2015) (cleaned up). "A court considering NYCHRL claims must consider 'the totality of the circumstances' and the 'overall context in which the challenged conduct occurs.'" *Livingston v. City of New York*, 563 F. Supp. 3d 201, 234 (S.D.N.Y. 2021) (internal citation omitted).

But even though these claims are subject to the same burden shifting framework, in contrast with claims under Title VII, in order to establish a discrimination claim under the NYCHRL or NYSHRL, a plaintiff need only show "by a preponderance of the evidence that []he has been treated less well than other employees because of h[is]" race. *Valerio v. Metro. Transportation Auth*., 2025 WL 686028, at *4 (2d Cir. Mar. 4, 2025) (citing *Mihalik*, 715 F.3d at 110). And for a retaliation claim under these statutes, a plaintiff need not demonstrate that race was a "but for" cause of the activity, only that "[]he took an action opposing [his] employer's discrimination and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Leroy v. Delta Air Lines*, No. 21-267, 2022 WL 12144507, at *2 (2d Cir. Oct. 27, 2022) (citing *Mihalik,* 715 F.3d at 112).

The NYCHRL also largely follows Title VII in terms of its liability imputation rules. "The NYCHRL imposes liability on an employer for actions of an employee or agent in three circumstances: (1) where the offending employee exercised managerial or supervisory responsibility; (2) where the employer knew of the offending employee's unlawful discriminatory conduct and acquiesced in it or failed to take 'immediate and appropriate corrective action'; and (3) where the employer 'should have known' of the offending employee's unlawful discriminatory conduct yet 'failed to exercise reasonable diligence to prevent it.'" *Leroy v. Delta Air Lines*, 2022 WL 12144507, at *3 (2d Cir. Oct. 27, 2022) (quoting *Zakrzewska v. New School*, 14 N.Y.3d 469, 479 (2010)).

The Court's analysis with respect to Plaintiff's claims under the NYCHRL and NYSHRL can therefore be dealt with rather summarily. The Court has found that genuine issues of material fact preclude summary judgment as to Plaintiff's Title VII hostile work environment claim. It therefore follows *a fortiori* that Plaintiff's hostile work environment claim under the more liberal standards of the NYCHRL and NYSHRL may proceed. *See Knox v. CRC Mgmt. Co.*, LLC, 134 F.4th 39, 49 (2d Cir. 2025) (stating that plaintiff would necessarily meet NYCHRL burden if she satisfied burden under Title VII and NYSHRL).

With respect to race discrimination, the claim also survives. The "NYCHRL does not differentiate between discrimination and hostile work environment claims, which means that [a] [c]ourt should perform the same analysis on [p]laintiff's hostile work environment claim as it does on his discrimination claim.") *Konteye v. New York City Dep't of Educ.*, 2019 WL 3229068, at *7 (S.D.N.Y. July 18, 2019) (citation omitted); *accord Milord-Francois v. New York State Off. of Medicaid Inspector Gen.*, 635 F. Supp. 3d 308, 330 (S.D.N.Y. 2022). As such, because the

hostile work environment claim survives, Plaintiff's claim for race discrimination under the NYCHRL and NYSHRL therefore also survives.

With respect to retaliation under the NYCHRL and NYSHRL, however, this claim does not survive summary judgment even under this more liberal standard. This is because, as discussed *supra*, Defendant has either (1) proffered a non-discriminatory basis for the alleged discriminatory action (the detail to E-329 was plaintiff's summer detail, Plaintiff went on medical leave of his own volition in December 2021[7], and he was subsequently placed on light duty for valid medical reasons); or (2) took sufficient remedial action such that they could not be vicariously liable (in December 2021, Defendant promptly investigated Restrepo's comments and the transfer form incident; in February 2023, Defendant filed an EEOO complaint on Plaintiff's behalf and arranged for new gear to replace the damaged gear; and after the February 2023 incident, Plaintiff requested reassignment, and Defendant reassigned Plaintiff to E-70 after conversing with him and considering what would be best for his career). *See supra*, Discussion § III (A)–(C).

Plaintiff's claims for race discrimination and hostile work environment therefore survive summary judgment under the NYSHRL and NYCHRL, but the retaliation claim is dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED in part and DENIED in part. Plaintiff's claims for race discrimination (under the NYCHRL and NYSHRL) and hostile work environment (under Title VII, NYSHRL, and the NYCHRL) survive

---

[7] The Court did not analyze the December 2021 incident as to the federal retaliation claim because, as mentioned previously, Plaintiff did not attempt to argue the December 2021 could form the basis for that claim. Opp. at 21–22. Plaintiff does however assert it "easily" satisfies the less exacting NYCHRL standards. *Id.* As explained, the Court disagrees.

summary judgment and will proceed to trial. By **October 24, 2025**, the parties shall file a joint letter with proposed trial dates for April, May or June 2026, and the letter shall indicate whether the parties are interested in a referral to the Mediation Program or to Magistrate Judge Wang for a settlement conference. Should the parties indicate they do not wish to be referred, the letter **must not indicate which party did not wish to be referred.** The Clerk of Court is respectfully directed to terminate ECF No. 59.

Dated:  September 29, 2025
        New York, New York

SO ORDERED.

JESSICA G. L. CLARKE
United States District Judge